Opinion issued August 3, 2006    
     












In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00605-CV




MAX BOWEN, INDIVIDUALLY and D/B/A MAX BOWEN
ENTERPRISES, Appellant

V.

ROY B. ROBINSON, Appellee




On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause No. 03CV1173

 
O P I N I O N
            Appellant, Max Bowen, individually and d/b/a Max Bowen Enterprises
(“Bowen”), appeals from a judgment rendered upon a jury’s award of damages for
breach of contract in favor of appellee, Roy B. Robinson. We determine (1) whether
the trial court abused its discretion by submitting Robinson’s breach-of-contract claim
to the jury because the cause of action was allegedly unpleaded; (2) whether
Robinson’s judicial admissions barred his recovery under his breach-of-contract
claim; and (3) whether the trial court erred by entering judgment awarding breach-of-contract damages. We affirm the trial court’s judgment. 
Background
          In 2001, Bowen and Robinson had discussions about constructing a barge canal
on Bowen’s land. Bowen owned 300 acres of waterfront property in San Leon,
Texas, near Dickinson Bay. Robinson had expertise in constructing barge canals and
owned equipment to complete the project. Bowen and Robinson discussed
Robinson’s building the canal with his equipment, expertise, and labor in exchange
for a share of the proceeds from the sale of Bowen’s 80 acres of improved property
near Dickinson Bay (“the property”). On May 2, 2001, Donald Lancon, Bowen’s
project manager, submitted an application to the United States Department of the
Army Corps of Engineers (“USDACE”) on behalf of Bowen for the construction of
the barge canal.


 In December 2001, Lancon filed an application with the Texas
General Land Office (“TGLO”) for permission to cross Texas land when the
USDACE permit was granted. In a letter dated February 26, 2002, the USDACE
issued a permit for construction of the barge canal. On March 11, 2002, Lancon sent
notice to the USDACE that the barge canal work had been started under the USDACE
permit. 
          From December 2001 through April 2002, Robinson and his team were on the
property, preparing the project site for the barge canal excavation by constructing an
access road and scraping topsoil. Lancon was on the property daily while Robinson
continued work on the property. On April 21, 2002, Lancon evicted Robinson from
the property. By that point, Robinson had constructed an access road, prepared the
site for excavation, fully constructed a dam, and started excavating the barge canal
on the dry side of the dam. 
          Robinson testified that he and Bowen had agreed that, in exchange for
Robinson’s digging the channel, disposing of the dirt, and building a canal, Bowen
would pay Robinson 40 percent of the profit from selling or leasing the property. 
Bowen estimated that the market value of the property when the barge canal was
completed would be between $80,000 to $100,000 per acre. He also testified that he
had expended approximately one million dollars in completing construction of the
barge canal for the property. Robinson based his damages calculation on the
expected benefit of his agreement with Bowen. Robinson testified that his range of
benefit-of-the-bargain damages was from $887,000 to $1,596,000. The jury awarded
Robinson breach-of-contract damages in the amount of $841,528 and quantum meruit
damages in the amount of $46,643.50. The trial court entered judgment on
Robinson’s breach-of-contract cause of action.
Sufficiency of Pleadings
          In his first point of error, Bowen argues that “Robinson’s pleaded legal theories
do not support the judgment.” In his fifth point of error, Bowen argues that “the court
erred in submitting jury questions 1 and 2 because there was no pleading to support
those issues.”


 In his sixth point of error, Bowen argues that “the trial court erred by
entering judgment because it is unsupported by the pleadings.” Because Bowen’s
first, fifth, and sixth points of error are related, we consider them together.
          Specifically, Bowen contends that, during trial, Robinson “changed his story”
from a claim of implied partnership to a claim that Robinson’s contract was with
Bowen, not the alleged partnership. Bowen contends that Robinson changed theories
because Robinson belatedly realized that his claim that there was an implied
partnership to which Bowen had orally agreed to transfer land was legally
unenforceable under the statute of frauds. 
          We conclude that Robinson’s petition was sufficient to give Bowen notice that
the cause of action was for breach of an oral agreement with Bowen to construct a
barge canal. The object and purpose of pleading is to give fair and adequate notice
to the party being sued of the nature of the cause of action asserted against him. 
Castleberry v. Goolsby Bldg. Corp., 617 S.W.2d 665, 666 (Tex. 1981). “The purpose
of this rule is to give the opposing party information sufficient to enable him to
prepare a defense.” Roark v. Allen, 633 S.W.2d 804, 810 (Tex. 1982). The test of
fair notice is “whether an opposing attorney of reasonable competence, with the
pleadings before him, can ascertain the nature and the basic issues of the controversy
and the testimony probably relevant.” State Fid. Mortg. Co. v. Varner, 740 S.W.2d
477, 479 (Tex. App.—Houston [1st Dist.] 1987, writ denied) (citation omitted). The
“fair notice” requirement of Texas pleading relieves the pleader of the burden of
pleading evidentiary matters with meticulous particularity. Id. at 480. In his live
petition, Robinson asserted a claim entitled “Breach of Contract–Partnership,” which
provided,
8.ROY B. ROBINSON brings this cause of action for
breach of contract against MAX BOWEN,
individually and d/b/a MAX BOWEN
ENTERPRISES and respectfully shows the Court as
follows.
 
9.At the specific request, instance and urging of MAX
BOWEN, a partnership was created and formed by
and between MAX BOWEN, individually and d/b/a
MAX BOWEN ENTERPRISES and ROY B.
ROBINSON. As a result of that partnership, ROY B.
ROBINSON acquired real, beneficial and present
interests in all property contributed to the
partnership including real property. In April 2002,
MAX BOWEN, sought to unilaterally terminate the
partnership by evicting ROY B. ROBINSON from
partnership property and denying the existence of a
partnership any contractual agreement with ROY B.
ROBINSON. 

In his live petition, Robinson also asserted a claim entitled “Breach of
Contract–Construction,” which provided,
11.ROY B. ROBINSON brings this cause of action for
breach of contract against MAX BOWEN,
individually and d/b/a MAX BOWEN
ENTERPRISES and respectfully shows the Court as
follows.
 
12.Beginning on or about December 2001, the
partnership consisting of MAX BOWEN retained
the services of ROY ROBINSON for the purpose of
constructing a slip on real property owned for the
benefit of the partnership. From December 2001,
through April 2002, ROY ROBINSON diligently
performed services and provided valuable goods and
materials for the construction of the slip. However,
prior to completion of the slip, MAX BOWEN
unilaterally evicted ROY ROBINSON from the
partnership property and informed that his services
were no longer required for the construction of the
slip. During the period of construction, ROY
ROBINSON provided equipment, materials, labor
and expertise in an aggregate amount exceeding the
minimum jurisdictional limits of this Court. The
improper termination of the contract to excavate and
complete the slip caused ROY ROBINSON actual
damages for which he seeks recovery by this action.
 
Robinson’s petition was sufficient to give Bowen notice that Robinson was asserting
a cause of action for breach of an oral agreement to construct a barge canal in
addition to a breach-of-partnership claim. The trial court thus did not err in
submitting jury questions one and two, and Robinson’s pleadings supported the
judgment rendered.
          We overrule Bowen’s first, fifth, and sixth points of error. 
          Judicial Admissions
          In his second point of error, Bowen argues that “Robinson’s judicial
admissions bar his claims for breach of construction contract.”
A.      Liability
          As to liability, Bowen argues that Robinson judicially admitted three times that
the contract was with the partnership, not Bowen;


 therefore, the jury’s affirmative
answer to whether Robinson and Bowen entered an agreement cannot stand. 
          Robinson’s statements were not judicial admissions. A judicial admission is
a formal waiver of proof that dispenses with the production of evidence on an issue. 
Lee v. Lee, 43 S.W.3d 636, 641 (Tex. App.—Fort Worth 2001, no pet.). A judicially
admitted fact is established as a matter of law, and the admitting party may not
dispute it or introduce evidence contrary to it. Id.; see Roosevelt v. Roosevelt, 699
S.W.2d 372, 374 (Tex. App.—El Paso 1985, writ dism’d). This rule is based on the
public policy that it would be absurd and manifestly unjust to permit a party to
recover after he has sworn himself out of court by a clear and unequivocal statement.
U.S. Fid. & Guar. Co. v. Carr, 242 S.W.2d 224, 229 (Tex. Civ. App.—San Antonio
1951, writ ref’d); Lee, 43 S.W.3d at 641; Roosevelt, 699 S.W.2d at 374. A judicial
admission must be a clear, deliberate, and unequivocal statement, and it occurs when
an assertion of fact is conclusively established in live pleadings, making the
introduction of other pleadings or evidence unnecessary. Horizon/CMS Healthcare
Corp. v. Auld, 34 S.W.3d 887, 905 (Tex. 2000). 
          Here, Robinson asserted in his petition claims for breach of contract of a
partnership agreement and, alternatively, breach of contract of a construction
contract. Rule 48 of the Texas Rules of Civil Procedure allows a claimant to plead
in the alternative, stating as many separate claims or defenses as he has regardless of
consistency and whether based upon legal or equitable grounds or both. See Tex. R.
Civ. P. 48. Robinson’s assertions in his petition, response to requests for disclosure,
and response to Bowen’s interrogatories did not constitute binding judicial admission
because they were not clear and unequivocal statements, given Robinson’s alternative
pleading. See Auld, 34 S.W.3d at 905 (holding that judicial admission occurs when
assertion of fact is conclusively established in live pleadings, making introduction of
other pleadings or evidence unnecessary). Moreover, the existence of a partnership
agreement between Bowen and Robinson was a contested issue at trial; in fact,
Bowen stated in his affidavit and took the position at trial that he had not entered into
any partnership agreement with Robinson. 

B.      Damages
          As to damages, Bowen argues that “[he] was entitled to rely on Robinson’s
pleadings, and since Robinson is bound by those pleadings as a matter of judicial
admission, Robinson is limited to recovering his out-of-pocket expenses for
‘equipment materials, labor and expertise.’”
          Robinson’s pleading coupled specific damage allegations with particular
causes of action. Under his breach-of-construction-contract claim, Robinson pleaded
that, “[d]uring the period of construction, ROY ROBINSON provided equipment,
materials, labor and expertise in an aggregate amount exceeding the minimum
jurisdictional limits of this Court. The improper termination of the contract to
excavate and complete the slip caused ROY ROBINSON actual damages for which
he seeks recovery by this action.” This was an out-of-pocket theory of damages. 
Under his breach-of-partnership claim, Robinson pleaded that the breach “caused
actual damages to ROY B. ROBINSON in an amount in excess of the jurisdictional
limits of this Court for which ROBINSON seeks recovery by the action. Those
damages included, but are not limited to, the reasonably anticipated profits of the
partnership and Robinson’s partnership interest value.” This was a benefit-of-the-bargain theory of damages. 

          The jury was charged only on the breach-of-construction-contract claim, not
on the breach-of-partnership claim. The charge instructed the jury to consider only
the following element of damages, if any: “The amount [Bowen] agreed to pay
[Robinson], less expenses [Robinson] saved by not completing the construction and
excavation of the barge canal.” This was a benefit-of-the-bargain theory of damages.
During the charge conference, Bowen objected that “the instruction to Question 4
[was] improper because it submits a benefit-of-the-bargain measure of damages that
Plaintiff did not allege in its [sic] pleadings and the issue was not tried by consent.” 
Additionally, Bowen objected that question four of the jury charge was improper
because Robinson sought to recover for loss of contractual profits that he had not
alleged in his pleadings and that Bowen did not try by consent. The trial court
overruled Bowen’s objections. 
          On appeal, Bowen does not complain about charge error. Bowen does not
mention or cite to his objection to the trial court’s submitting a benefit-of-the-bargain
measure of damages in either his amended or reply briefs. Nor does Bowen cite to
authority to explain how the trial court improperly charged the jury on damages.


 
Rather, Bowen argues that “Robinson judicially admitted that [the] value of his
‘equipment, materials, labor and expertise’ was $46,463.50. Having specifically
claimed that his damages for breach of contract was the value of his goods, labor,
equipment and sources, he cannot now expand that claim to an entitlement to
proceeds from the sale of land which never occurred.” Accordingly, we consider only
whether Robinson’s allegation that his damages consisted of expenses for equipment,
materials, labor, and expertise that he expended was a judicial admission because
Bowen does not complain on appeal that the trial court improperly charged the jury
on damages. See Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993) (holding that
courts of appeals may not reverse judgment of trial court for reason not raised in point
of error).
          Robinson’s statement in his pleading did not constitute a judicial admission. 
Cf. Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 767 (Tex. 1983) (holding that
assertions of fact, not pled in alternative, in live pleadings of party are regarded as
formal judicial admissions and any fact admitted is conclusively established in case
without introduction of pleadings or presentation of other evidence).
          In order for a pleading to be deemed a judicial admission, it must be deliberate,
clear, and unequivocal. Kirby Forest Indus. v. Kirkland, 772 S.W.2d 226, 233 (Tex.
App.—Houston [14th Dist.] 1989, writ denied). From our reading of Robinson’s
petition, we conclude that the statement at issue is not clear or unequivocal. See Field
v. AIM Mgmt. Group, Inc., 845 S.W.2d 469, 472 (Tex. App.—Houston [14th Dist.]
1993, no writ) (holding that conflicting allegations are not clear or unequivocal and
are insufficient to be judicial admissions). 
          Under Texas law, a party is not required to plead his measure of damages. 
Rowan Co.’s, v. Transco Exploration Co., 679 S.W.2d 660, 665 (Tex.
App.—Houston [1st Dist.] 1984, writ ref’d n.r.e.). Rule 47 of the Texas Rules of
Civil Procedure requires only a short and concise statement of a cause of action (i.e.,
breach of a specific contract) and damage from such breach.


 For example, the rule
does not require an allegation of the particular contract provision that allows or
precludes recovery. Pringle v. Nowlin, 629 S.W.2d 154, 157 (Tex. App.—Fort Worth
1982, writ ref’d n.r.e.); Parker v. McGinnes, 594 S.W.2d 550, 552 (Tex. Civ.
App.—Waco 1980, no writ); Adams v. Morris, 584 S.W.2d 712, 719 (Tex. Civ.
App.—Tyler 1979, no writ); Seureau v. Mudd, 515 S.W.2d 746, 748 (Tex. Civ.
App.—Houston [14th Dist.] 1974, writ ref’d n.r.e.); Aetna Cas. & Sur. Co. v. Clark,
427 S.W.2d 649, 656 (Tex. Civ. App.—Dallas 1968, no writ).


 
          Neither is the plaintiff required to allege the applicable legal measure of
damages. Rowen Co., 679 S.W.2d at 665. If the facts establishing the cause of action
are sufficiently set forth in the pleadings, and if they are supported by the evidence,
then the court must properly instruct the jury as to the measure of damages. Willis
v. Donnelly, 118 S.W.3d 10, 28 (Tex. App.—Houston [14 Dist.] 2003, pet. filed);
Dixie Fire Ins. Co. v. McAdams, 235 S.W.2d 207, 212 (Tex. Civ. App.—Fort Worth
1950, writ dism’d). When a party erroneously alleges the measure of his damages,
and the competent testimony reveals the proper measure, the court may charge the
jury on the proper measure. McAdams, 235 S.W.2d at 212; Willis, 118 S.W.3d at 28. 
           Taken in the context of the entire pleading, the measure of damages was
pleaded in the alternative, thereby placing Bowen on notice to defend against both
measures, and Robinson presented evidence at trial of both his out-of-pocket 
damages and benefit-of-the bargain damages. Accordingly, we hold that Robinson
was not limited by judicial admission or inadequate pleading to recovering his out-of-pocket expenses for “equipment materials, labor and expertise.”
          We overrule Bowen’s second point of error.           
Damages
          In his third point of error, Bowen argues that “Robinson’s damages testimony
is too speculative to support the jury’s award for damages.” In his fourth point of
error, Bowen argues that “Robinson failed to prove that his construction damages
were reasonable and necessary.”
A.      Sufficiency of the Evidence
          Bowen specifically contends that “[e]ven if Robinson had a claim for loss of
profits he failed to prove it” because his testimony was too speculative to show that
any alleged partnership would have made any profits. We construe Bowen’s
argument to be that the evidence is legally insufficient to support the jury’s finding
that Robinson sustained $841,528 in damages because those damages allegedly
contained lost profits that were not sufficiently proved. 
          1.       Standard of Review and the Law
          A reviewing court must view the evidence in the light most favorable to the
verdict, indulging every reasonable inference that supports it, but the court may not
disregard evidence that allows only one inference. City of Keller v. Wilson, 168
S.W.3d 802, 822 (Tex. 2005). “The final test for legal sufficiency must always be
whether the evidence at trial would enable reasonable and fair-minded people to reach
the verdict under review.” Id. at 827. “[L]egal-sufficiency review in the proper light
must credit favorable evidence if reasonable jurors could, and disregard contrary
evidence unless reasonable jurors could not.” Id. “A no-evidence point will be
sustained when (a) there is a complete absence of evidence of a vital fact, (b) the
court is barred by rules of law or evidence from giving weight to the only evidence
offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more
than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the
vital fact.” King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003)(citation
omitted).
          With respect to damages in breach-of-contract cases, the general rule is that
“the complaining party is entitled to recover the amount necessary to put him in as
good a position as if the contract had been performed.” Smith v. Kinslow, 598 S.W.2d
910, 912 (Tex. Civ. App.—Dallas 1980, no writ) (citation omitted). Put another way,
in a breach-of-contract case, the normal measure of damages is just compensation for
the loss or damage actually sustained, commonly referred to as the benefit of the
bargain. See SAVA Gumarska in Kemijska Industria D.D. v. Advanced Polymer
Sciences, Inc., 128 S.W.3d 304, 325 n.6 (Tex. App.—Dallas 2004, no pet.). The
benefit-of-the-bargain measure of damages may include reasonably certain lost
profits. See Cmty. Dev. Serv., Inc. v. Replacement Parts Mfg., Inc., 679 S.W.2d 721,
725 (Tex. App.—Houston [1st Dist.] 1984, no writ). 
          Lost profits are damages for the loss of net income to a business and, broadly
speaking, reflect income from lost business activity, less expenses that would have
been attributable to that activity. Miga v. Jensen, 96 S.W.3d 207, 213 (Tex. 2002);
see generally Capital Metro. Transp. Auth. v. Cent. of Tenn. Ry. & Navigation Co.,
114 S.W.3d 573, 581–82 & n.7 (Tex. App.—Austin 2003, pet. denied) (considering
both income projections and specific expenses when evaluating proof of lost profits).
Lost profits may be recovered for money that would have been made if the bargain
had been performed as promised. Formosa Plastics Corp. v. Presidio Eng’rs &
Contractors, Inc., 960 S.W.2d 41, 50 (Tex. 1998). In order to recover lost profits,
they must be proved with reasonable certainty and competent evidence. Szczepanik
v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994) (citation omitted). 
          Lost profits are recoverable if the evidence shows that the loss of profits was
a material and probable consequence of the breach complained of and the amount due
is shown with sufficient certainty. Cmty. Dev. Serv., Inc., 679 S.W.2d at 725. 
Generally, lost profits are properly calculated by deducting the costs of the injured
party’s performance supported by data from the actual contract price. Id. “However,
a witness may also prove lost profits by testifying as to what his profit would have
been, based on his knowledge of the cost of performance of each element of the
contract and subtracting the total of such costs from the contract price.” Id.
          2.       Analysis
          Bowen complains on appeal that there was no evidence from qualified and
designated experts regarding the market value of the property to support the jury’s
award of lost-profit damages.


 Specifically, Bowen contends that “Robinson, who
was not designated as an expert on damages, based his fantastic opinions regarding
the anticipated partnership profits on other sales of his own property in 1982—nearly
20 years before the relevant transaction! There was no testimony as to what the
relevant property was worth in either 2002 or 2004.” (Emphasis in original).
However, Robinson was designated as an expert witness and was expected “to testify
from his personal knowledge and from his years of experience in marine construction
and excavation about the methodology employed in work performed, the scope of the
work, the reasonableness of the fees charged, the value of the services rendered and
such other matters reasonably related to the work made a part of the claims of this
lawsuit.” 
          Robinson did not have to prove the lost profits by an exact calculation. See
Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc., 877 S.W.2d 276, 279 (Tex.
1994). However, Robinson had to do more than show that he had suffered some lost
profits. See id. The amount of Robinson’s loss had to be shown by competent
evidence with reasonable certainty. See Id. Competent evidence of lost profits
relating to property can be proved by the testimony of an expert or the owner of the
property. See Cmty. Pub. Serv. Co. v. Gray, 107 S.W.2d 495, 498 (Tex. Civ.
App.—El Paso 1937, no writ). “The requirement of ‘reasonable certainty’ in the
proof of lost profits is intended to be flexible enough to accommodate the myriad
circumstances in which claims for lost profits arise.” SW Battery Corp. v. Owen, 115
S.W.2d 1097, 1099 (Tex. 1938). “What constitutes reasonably certain evidence of lost
profits is a fact intensive determination. At a minimum, opinions or estimates of lost
profits must be based on objective facts, figures, or data from which the amount of
lost profits can be ascertained.” Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80,
84 (Tex. 1992); see, e.g., Pena v. Ludwig, 766 S.W.2d 298, 304 (Tex. App.—Waco
1989, no writ); Frank B. Hall & Co. v. Beach, Inc., 733 S.W.2d 251, 258 (Tex.
App.—Corpus Christi 1987, writ ref’d n.r.e.); Keller v. Davis, 694 S.W.2d 355, 357
(Tex. App.—Houston [14th Dist.] 1985, writ ref’d n.r.e.); Automark of Tex. v. Disc.
Trophies, 681 S.W.2d 828, 830 (Tex. App.—Dallas 1984, no writ). “Although
supporting documentation may affect the weight of the evidence, it is not necessary
to produce in court the documents supporting the opinions or estimates.” Holt
Atherton Indus., Inc., 835 S.W.2d at 84 .  
          The record shows that Robinson had extensive experience in dealing with the
sale of land in the Dickinson Bay area. Robinson’s testimony included objective facts
and figures from his past experience with property sales and construction projects in
the general area, as well as the property’s likely market value after completion of the
barge canal project. See Holt Atherton Indus., Inc., 835 S.W.2d at 84 (requiring that
“opinions or estimates of lost profits be based on objective facts, figures, or data from
which the amount of lost profits can be ascertained.”). Specifically, Robinson
testified that he had owned land on Dickinson Bayou beginning in 1974, that he had
dug a permitted channel in 1979 and 1980, that he had sold four acres in 1983 for
$85,000 per acre, that he had started digging a permitted channel in 1983, that he had
sold five acres in 1988 for $400,000, that he sold five acres in 1996 or 1997 for
$400,000, and that the property would sell for between $75,000 to $80,000 per acre. 
          Further, Robinson’s testimony of the property’s market value was undisputed. 
Bowen, the owner of the property, testified that the market value of his property upon
completion of the barge canal was estimated to be between $80,000 to $100,000 per
acre. It is well-settled that the “owner of the property can testify to its market value,
even if he could not qualify to testify about the value of like property belonging to
someone else.” Porras v. Craig, 675 S.W.2d 503, 504 (Tex. 1984) (citation omitted). 
Thus, the jury properly could have considered Bowen’s testimony regarding the
market value of his own property. See Redman Homes, Inc. v. Ivy, 920 S.W.2d 664,
669 (Tex. 1996).
          Viewed in the light most favorable to the verdict, the evidence showed that
Robinson testified that Bowen had agreed to pay him 40 percent of the total sales
price of the property, less expenses. The testimony was undisputed that the market
value of the property upon completion of the barge canal ranged from $75,000 to
$100,000.


 Bowen testified that he expended approximately one million dollars in
constructing the barge canal for the property. Robinson testified that the expenses
that he did not have to incur because Bowen had prevented him from completing the
construction of the barge canal on the property totaled $700,000. The evidence thus
supported that the range of benefit-of-the-bargain damages was from $887,000


 to
$1,596,000. The jury awarded Robinson breach-of-contract damages in the amount
of $841,528. The jury’s finding was within the range of the testimony regarding the
amount of damages incurred. See State Farm Fire & Cas. Co. v. Rodriguez, 88
S.W.3d 313, 321 (Tex. App.—San Antonio 2002, pet. denied). 
          Accordingly, we hold that the evidence was legally sufficient to support the
jury’s finding that Robinson sustained $841,528 in damages. 
We overrule Bowen’s third point of error.
B.      Reasonableness and Necessity
          Bowen next argues that “[a]lthough the Mechanics and Materialmen’s lien



was offered as an exhibit at trial, there is no evidence that the amounts set forth in that
lien and the accompanying invoices were reasonable.” Bowen challenges the jury’s
answer to question number eight, in which the jury found that the reasonable value
of Robinson’s quantum meruit claim to be $46,463.50. 
          However, the judgment did not award Robinson damages on the alternative
quantum meruit claim. Accordingly, we need not address Bowen’s fourth point of
error.                                                     Conclusion
          We affirm the judgment of the trial court.
                                                             
                                                                                                                          
                                                             Tim Taft
                                                             Justice
 
Panel consists of Justices Taft, Higley, and Bland.